UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


M.C. WHITLEY,

        Petitioner,

                                  CASE NO. 2:08-CV-14172
  v.                         JUDGE DENISE PAGE HOOD
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

HUGH WOLFENBARGER,

        Respondent.[1]

_____/


**REPORT AND RECOMMENDATION**


*Table of Contents*

I.    RECOMMENDATION……………………………………………….…………2
II.   REPORT……………………………………………………………………….2
     A.    *Procedural history*…………………………………………..…………2
     B.    *Factual Background Underlying Petitioner's Conviction*……………..…………5
     C.    *Standard of Review*…………………………………………………6
     D.    *Right to a Fair Trial* ………………………………………… …………8
          1. Clearly Established Law……………………………………………8
          2. Inadmissible Evidence……………………………………………10
          3. Improper Bolstering……………………………………………12
          4. Improper Questioning………………………………………… ………13
     E.    *Insufficient Evidence*……………………………………………………13
          1. Clearly Established Law……………………………………………14
          2. Analysis……………………………………………………15
     F.    *Sentencing Claim*………………………………………………………17
          1. Clearly Established Law……………………………………………17
          2. Analysis……………………………………………………18
     G.    *Lack of Notice*..…………………………………………………...19
          1. Clearly Established Law……………………………………………19
          2. Lack of Notice……………………………………………………20
          3. Lack of Jurisdiction……………………………………………21
     H.    *Ineffective Assistance of Counsel*…………………………………………22
          1. Clearly Established Law……………………………………………22
          2. Analysis……………………………………………………...23

---

1. By Order entered this date Hugh Wolfenbarger has been substituted in place of Cindi Curtin as the proper respondent in this action.

     I.     *Right to Certificate of Appealability*……………………………………………...24
          1. Legal standard……………………………………………………………..24
          2. Analysis………………………………………………………………………26
     J.     *Conclusion*………………………………………………………………………….26
III.     NOTICE TO PARTIES REGARDING OBJECTIONS…………………………….27

\*     \*     \*     \*     \*

I.     RECOMMENDATION:

The Court should deny petitioner's application for the writ of habeas corpus. The Court should also deny petitioner a certificate of appealability.

II.     REPORT:

A.     *Procedural History*

    1.     Petitioner M.C. Whitley is a state prisoner, currently confined at the Macomb Correctional Facility in New Haven, Michigan.

    2.     On July 22, 2005, petitioner was convicted of second-degree murder, MICH. COMP. LAWS § 750.317, following a jury trial in the Monroe County Circuit Court. On September 8, 2005, he was sentenced to a term of imprisonment of 40-65 years.

    3.     After the trial, petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.     DEFENDANT WAS DENIED A FAIR TRIAL BY INADMISSIBLE, HIGHLY INFLAMMATORY TESTIMONY FROM SEVERAL JAILHOUSE SNITCHES AND BY THE PROSECUTOR IMPROPERLY AND UNFAIRLY BOLSTERING THE SNITCHES' TESTIMONY. US CONST AM XIV.

    II.     THE GREAT WEIGHT OF THE EVIDENCE PRESENTED WAS INSUFFICIENT TO ESTABLISH BEYOND A REASONABLE DOUBT THAT THE DEFENDANT/APPELLANT, MC WHITLEY, WAS GUILTY OF MURDER IN THE SECOND DEGREE.

    III.     DEFENDANT WAS DENIED A FAIR TRIAL AND DUE PROCESS WHEN THE PROSECUTOR IMPROPERLY CONTINUED TO QUESTION

A WITNESS ABOUT EVIDENCE ALREADY RULED INADMISSIBLE BY THE TRIAL COURT.

IV.   THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY DEPARTING ABOVE THE STATUTORY SENTENCING GUIDELINE RANGE BASED ON DISPUTED FACTS WHICH THE PROSECUTOR DID NOT PROVE BEYOND A REASONABLE DOUBT AND FACTS THAT WERE ALREADY SCORED OR CONSIDERED WITHIN THE SENTENCING GUIDELINES.

Petitioner additionally raised the following supplemental pro se claims:

V.    THE STATE LACK[ED] JURISDICTION TO COMMENCE THE ACTION WHEN THE MONROE COUNTY PROSECUTING ATTORNEY SOUGHT TO TRY THE APPELLANT FOR AN OFFENSE NAMED HOMICIDE-OPEN MURDER WHERE NEITHER THE LEGISLATIVE BODY NOR THE JUDICIARY BRANCHES OF THIS STATE HAVE NAMED OR DEFINED HOMICIDE-OPEN MURDER AS AN OFFENSE IN THIS STATE AND THE ALLEGED OFFENSE IS NOT NAMED OR DEFINED AT COMMON LAW.

VI.   THE STATE DEPRIVED THE APPELLANT OF HIS CONSTITUTIONAL RIGHT TO NOTICE OF A SECOND DEGREE MURDER CHARGE WHEN THE MONROE COUNTY PROSECUTING ATTORNEY PROCEEEDED WITH AN OFFENSE OF HOMICIDE-OPEN MURDER.

VII.  THE APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FAILED TO TIMELY SEEK A BILL OF PARTICULAR[S] WHERE THE STATE PROCEEDED AGAINST THE APPELLANT BY FILING DOCUMENTS ALLEGING AN OFFENSE IN STATUTORY SHORT FORM.

The court of appeals found no merit to petitioner's claims and thus affirmed his conviction and sentence. *See People v. Whitley*, No. 265482, 2007 WL 600759 (Mich. Ct. App. Feb. 27, 2007) (per curiam).

1.    Petitioner, proceeding through counsel, sought leave to appeal to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Whitley*, 488 Mich. 888 (2008).

2.     Petitioner, proceeding pro se, filed the instant application for a writ of habeas corpus on September 29, 2008.  As grounds for the writ of habeas corpus, he raises the following seven claims:

I.     PETITIONER WAS DENIED A FAIR TRIAL BY INADMISSIBLE, HIGHLY INFLAMMATORY TESTIMONY FROM SEVERAL JAILHOUSE SNITCHES AND BY THE PROSECUTOR IMPROPERLY AND UNFAIRLY BOLSTERING THE SNITCHES' TESTIMONY.

II.    THE GREAT WEIGHT OF THE EVIDENCE PRESENTED WAS INSUFFICIENT TO ESTABLISH BEYOND A REASONABLE DOUBT THAT THE PETITIONER-APPELLANT, MC WHITLEY, WAS GUILTY OF MURDER IN THE SECOND DEGREE.

III.   PETITIONER WAS DENIED A FAIR TRIAL AND DUE ROCESS WHEN THE PROSECTUOR IMPROPERLY CONTINUED TO QUESTION A WITNESS ABOUT EVIDENCE ALREADY RULED INADMISSIBLE BY THE TRIAL COURT.

IV.    THE TRIAL COURT VIOLATED PETITIONER'S DUE PROCESS RIGHTS BY DEPARTING ABOVE THE STATUTORY SENTENCING GUIDELINE RANGE BASED ON DISPUTED FACTS WHICH THE PROSECUTOR DID NOT PROVE BEYOND A REASONABLE DOUBT AND FACTS THAT WERE ALREADY SCORED OR CONSIDERED WITHIN THE SENTENCING GUIDELINES.

V.     THE STATE LACK[ED] JURISDICTION TO TRY THE PETITIONER FOR AN OFFENSE NAMED HOMICIDE-OPEN MURDER WHERE NEITHER THE LEGISLATIVE BODY NOR THE JUDICIARY BRANCHES OF THIS STATE HAVE NAMED OR DEFINED HOMICIDE-OPEN MURDER AS AN OFFENSE IN THIS STATE AND THE ALLEGED OFFENSE IS NOT NAMED NOR DEFINED AT COMMON LAW.

VI.    THE STATE DEPRIVED THE PETITIONER OF HIS CONSTITUTIONAL RIGHT TO NOTICE OF A SECOND DEGREE MURDER CHARGE WHEN THE MONROE COUNTY PROSECUTING ATTORNEY PROCEEDED WITH AN OFFENSE OF HOMICIDE-OPEN MURDER.

VII.   THE PETITIONER WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FAILED TO TIMELY SEEK A BILL OF PARTICULAR[S] WHERE THE STATE PROCEEDED AGAINST THE PETITIONER BY

FILING DOCUMENTS ALLEGING AN OFFENSE IN STATUTORY SHORT FORM.

3.     Respondent filed his answer on February 13, 2009. Respondent contends that petitioner's claim regarding improper bolstering is procedurally defaulted and that all of petitioner's claims are without merit.

B.     *Factual Background Underlying Petitioner's Conviction*

The factual background underlying Petitioner's conviction was adequately summarized in the prosecutor's brief filed in the court of appeals:

> Defendant-Appellant ("Defendant") M.C. Whitley was charged with First Degree Murder in the shooting death of Francis David Sharp ("victim" or "Mr. Sharp") on January 26, 1994, in the City of Monroe, County of Monroe.
>
> On July 18, 2005, jury trial commenced before the Honorable Michael W. LaBeau in the Monroe County Circuit Court. Betty Jennings testified that shortly before the victim's death she allowed the victim to use her phone. The victim called an unidentified person and begged the person not to kill him over money. (T 130 131). Michelle Massie testified and said that the victim told her that he owed M.C. money over drug dealings. (T 150 151).
>
> Kenneth Bell testified that he was at M.C. Whitley's house on January 26, 1994. (T 247). He also testified that on January 26, 1994, Mr. Bell witnesse[d] the Defendant shoot the victim. (T 252). Defendant wrapped up the victim's body and stuck the body upstairs in the attic. (T 253). Mr. Bell and Defendant then went to a bar, and left the victim rolled up in the Defendant's house. (T 253). After leaving the bar, around closing time, Defendant and Mr. Bell went back to the Defendant's house, got the victim's body out of the attic, put the body in the car, and dropped it off in an alley.
>
> Loreida Hensely testified that she was at M.C. Whitley's house on January 16, 2004, and heard a gun shot. (T 199). She went into the living room and saw the Defendant yelling at the victim that the victim owed the Defendant money. Loreida Hensely heard the Defendant and victim arguing, saw blood coming from the victim's chest, and heard the victim saying, "My dad and Little Harm did it." (T 204 205 206). Werner Spitz was qualified as an expert in pathology and testified that on January 26, 1994, he conducted the postmortem exam on David Sharp. (T 373-75). Spitz opined that the cause of death was a gunshot wound but the time of death could not be determined. (T379-80).
>
> Cpl. Charles Miller testified that he was working in the early morning hours of December 26, 1994. (T 155). He was called to the alley between Seventh and Eighth and Jerome and Navare. (T 155). Corporal Miller found a male Caucasian lying face down who showed no signs of life (T 157, 158). Corporal Miller observed

fresh tire marks in the alley and drag marks from the victim's body to where the car would have been. (T 159). Gerald Kohler testified that while leaving for work, he saw the victim's body in the alley between Jerome Street and Seventh Street.

      Joe Abraham testified that, while in prison with Defendant, the Defendant admitted to killing a few people and his pending murder trial in this case. (T 316). He also testified that the victim owed Defendant money from drug dealings. (T 318, 322). Additionally, Waukeen Spraggins testified that, while in prison with Defendant, that Defendant admitted to shooting the victim, put the victim's body in a van, and later washed the van out at a car wash. (T 334, 335). . . .

Prosecutor's Appellate Brief, at vi-vii.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Right to a Fair Trial (Claims I and III)*

Petitioner claims that his right to a fair trial was denied due to inadmissible "bad acts" testimony and prosecutorial misconduct in the form of improper bolstering of evidence and improper questioning. Because the incidents in question did not undermine the fundamental fairness of the trial, the Court should conclude that petitioner is not entitled to relief on this claim.

I.     *Clearly Established Law*

The right to a fair trial is protected by the Due Process Clause of the Fourteenth Amendment. *Adamson v. People of State of California*, 332 U.S. 46 (1947). "An important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence." *Bruton v. United States*, 391 U.S. 123, 132 n.6 (1968) (*citing Blumenthal v. United States*, 332 U.S. 539, 559-60 (1947)). However, states have broad authority in enacting their rules of evidence:

> [I]t is normally within the power of the State to regulate procedures under which its laws are carried out, and [a State's] decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.

*Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Because habeas relief is not available to remedy a state court's error in the application of

8

state law, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."), admission of evidence is only a constitutional issue if the state law itself or the violation of state law resulted in the denial of fundamental fairness. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).

"[T]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007) (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512-513 (6th Cir. 2003)). The Supreme Court has flagged but not resolved the issue: "Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." *Estelle*, 502 U.S. at 75 n.5. Thus, habeas relief is only available in the case of erroneously admitted evidence where the evidence is "almost entirely unreliable and [therefore] the factfinder and the adversary system [would] not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899, 103 S. Ct. 3383, 3398 (1983). Errors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

Similarly, for habeas relief to be warranted on the basis of prosecutorial misconduct, the conduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation omitted). It is not enough that the prosecutor's misconduct was "undesirable or even universally condemned." *Id.* "The touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the

prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process, the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotations omitted).

2.    *Inadmissible "Bad Acts" Evidence*

The court of appeals reasonably denied petitioner's claim that his right to fair trial was violated by inadmissible testimony. Petitioner argues that the testimony of Abraham, Probst, Spraggins, and Warren was inadmissible "bad acts" evidence that attacked his character and violated Mich. R. Evid. 404. It is undisputed that Mich. R. Evid. 404 prohibits bad acts evidence for the purpose of showing a defendant's character or propensity to commit the crime in question: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, [et cetera]." Mich. R. Evid. 404(b)(1). However, violation of state law is not a cognizable basis for habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, "to the extent that [a petitioner] claims that the trial court's admission of . . . 'other acts' evidence violated [a state evidence rule], he does not provide a cognizable basis for granting habeas relief." *Bagley*, 500 F.3d at 519. As the Supreme Court has not established any precedent prohibiting character evidence as part of due process protection, *Bagley,* 500 F.3d at 520; *McGuire*, 502 U.S. at 75 n.5, the constitutionality of Mich. R. Evid. 404(b)(1) is not in question.

Petitioner is left to argue that the violation of the evidentiary rule allowed the admission of evidence that was "almost entirely unreliable," to the point where the "factfinder and the adversary system [would] not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899, 103 S. Ct. 3383, 3398 (1983). In the instant case, petitioner identifies several testimonial items that allegedly violated his right to a fair trial: Joe Abraham's testimony that petitioner admitted to "kill[ing] a few people;" Robert Probst's testimony that petitioner threatened to "whack him [Probst];" and Waukeem Spraggins's hearsay testimony that Mr. Whitley admitted to shooting David Sharp; as well as allegations that petitioner was a drug dealer. Pet'r's Mem., at 15-16. The court of appeals found that the testimony was "harmless when assessed in the context of the admissible evidence." *People v. Whitley*, No. 265482, 2007 WL 600759, at *1 (Mich. Ct. App. Feb. 27, 2007) (per curiam). In light of the on-scene testimony from witnesses Loreida Hensley and Kenneth Bell, and the opportunities for the factfinder to recognize the shortcomings of the bad acts evidence, the court of appeals's determination was a reasonable application of clearly established law. Petitioner's claim that his right to fair trial was violated by inadmissible testimony should be denied.

3. *Improper Bolstering*

Petitioner's claim that his right to a fair trial was violated by prosecutorial misconduct committed through improper bolstering has no merit. Improper vouching occurs when the prosecutor supports the credibility of a witness either (1) "by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). The comment at issue was made by the prosecutor during closing arguments; the prosecutor said, "[W]e also will say, yes, if safety

precautions are needed we'll do that. So think about it yourself again—or any citizen, any citizen that's in prison. Would you stick your neck out that far for that?" Trial Tr. vol. 3, at 594: 18-25-595:1.

The prosecutor's comment does not indicate a personal belief in the credibility of the witnesses or imply that the prosecutor has special knowledge of additional facts. As the Supreme Court found in *United States v. Young*, a prosecutor indicates a special knowledge of facts where he "convey[s] the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant." *United States v. Young*, 470 U.S. 1, 18-19 (1985). However, prosecutors are entitled to "make reasonable inferences from the evidence." *Miner v. Metrish*, 2007 WL 269448, at *8 (E.D. Mich 2007) (citing *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)). The comment in question makes a general inference for the factfinder to consider in determining witness credibility. The prosecution did not imply that the witnesses in question were being provided safety protection but spoke generally about the considerations that should be taken into account when weighing credibility. Thus, the court of appeals's determination that there was no objectionable argument made by the prosecution is therefore not contrary to nor an unreasonable application of clearly established law, and petitioner's claim should be denied.

4.    *Improper Questioning*

The court of appeals also reasonably denied petitioner's claim that he was denied the right to a fair trial because the prosecutor improperly continued to question a witness regarding evidence that had already been ruled inadmissible. While questioning witness Joe Abraham, the prosecutor at one point elicited testimony alleging that petitioner was a drug dealer. Petitioner's counsel objected, and the prosecutor agreed to move on to a different topic. However, instead of moving on as he agreed, the prosecutor continued along the same line of questioning. The trial judge immediately

12

reprimanded the prosecutor, sustained petitioner's objection, and told the jury to "disregard the last statement." Trial Tr. vol. 2, at 314-315. Given that the misconduct at issue concerns only one line of questioning and that the trial judge immediately took steps to negate its impact, the improper questioning did not "so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The court of appeals found that "[petitioner] was not prejudiced to the point that he was denied a fair and impartial trial . . . especially where the trial court instructed the jury to disregard the offending statement." *People v. Whitley*, No. 265482, 2007 WL 600759, at *2 (Mich. Ct. App. Feb. 27, 2007) (per curiam) (citing *People v. Abraham*, 256 Mich. App. 265, 272, 276, 662 N.W.2d 836 (2003)). This decision is not contrary to nor an unreasonable application of clearly established law, and therefore petitioner's claim that he was denied a fair trial due to improper questioning should be denied.

E.     *Insufficient Evidence*

Petitioner claims that there was insufficient evidence to support his conviction of second-degree murder. Because his argument rests on an attack of witness credibility, which is not taken into account in reviewing the sufficiency of the evidence, the Court should conclude that the petitioner is not entitled to relief on this claim.

1.     *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under 28 U.S.C. 2254(d), the standard for habeas review is whether the court of appeals's decision was an unreasonable application of federal law—where the evidence is potentially insufficient, that means application of the *Jackson* standard. The *Jackson* standard for sufficiency of the evidence is

"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also*, *United States v. Canan*, 48 F.3d 954 (6th Cir. 1995). Reviewing courts must view the evidence, draw inferences, and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).

It is well-established that a reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations." *Gov't of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict." *United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977). Thus, a federal court "must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under Michigan law, the common law crime of murder is defined as second-degree murder and is punishable by up to a life imprisonment. *See* MICH. COMP. LAWS § 750.317. To establish second degree murder, the prosecution must show that the defendant killed a human being with

malice aforethought. In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill, (2) intent to commit great bodily harm, or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984).

    2.    *Analysis*

The court of appeals reasonably concluded that petitioner's claim of insufficient evidence should be denied, since petitioner's argument rests on an attack of witness credibility. Petitioner contends that "there was no proof that Mr. Whitley was the shooter or that it [the killing of David Sharp] was done with malice or without justification or excuse beyond *the wild allegations of Kenneth Bell and Loreida Hensley*." Pet'r's Mem., at 25. According to petitioner, Hensley's testimony "was clearly false," and Bell's testimony was suspect as well. However, courts do not assess the credibility of the witnesses in review of sufficiency of the evidence. *See Owusu*, 199 F.3d at 344. Further, this testimony must be taken in the light most favorable to the prosecution. *See Jackson*, 443 U.S. at 319.

In this case, witnesses Kenneth Bell and Loreida Hensley both testified to being present when petitioner killed David Sharp. Hensley testified that on the night of Sharp's death, she heard a gunshot, and the next moment she saw petitioner propping up a slouching Sharp, who had his hand over his chest and said that his wound "burnt." Trial Tr., Vol. I, at 206, 235-38. Kenneth Bell also testified to being present at the scene of the murder; he said petitioner pulled the trigger, and then Sharp got shot. Trial Tr., Vol. I., at 252.

Petitioner argues that such testimony is mere "wild allegations," but a determination of witness credibility is the domain of the factfinder. *See United States v. Owusu*, 199 F.3d 329, 344

(6th Cir. 2000). Taken in the light most favorable to the prosecution, and given that "[e]ven in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict," *United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005), Bell and Hensley's testimony is sufficient to prove intent to kill beyond a reasonable doubt and convict petitioner of second-degree murder. Therefore, the court of appeals was reasonable when it concluded that it would not interfere with the determinations of the trier of fact and that "viewing the evidence in a light most favorable to the prosecutor, a trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt," *People v. Whitley*, No. 265482, 2007 WL 600759, at *2 (Mich. Ct. App. Feb. 27, 2007) (per curiam). Thus, petitioner's claim for insufficient evidence has no merit and should be denied.

F.     *Sentencing Claim*

Petitioner next claims that the trial court's upward departure from the sentencing guideline range violates his right to due process. However, as the trial court merely departed from the minimum range provided by the sentencing guidelines but stayed within the statutory maximum, the Court should conclude that petitioner is not entitled to relief on this claim.

1.     *Clearly Established Law*

Under the Due Process Clause of the Fourteenth Amendment, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."*Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). "[T]he 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely v. Washington*, 542 U.S. 296, 303 (2004). A trial court's reliance on facts not proven beyond a reasonable doubt to the jury or admitted by the petitioner at a plea proceeding to

depart above the statutory sentencing guideline range for an offense violates the Fourteenth Amendment. *See Blakely*, 542 U.S. 296.

The Supreme Court has said that the rule in *Apprendi* does not apply to indeterminate sentencing:

> [T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 308-09; *see also*, *People v. Drohan*, 475 Mich. 140, 163-64 (2006).

Additionally, the same constitutional protection does not exist where the minimum penalty for an offense is at issue. *McMillan v. Pennsylvania*, 477 U.S. 79 (1986) (upholding a statute that increased the minimum penalty for an offense where the sentencing judge found existence of an aggravating factor by a preponderance of the evidence). "The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict has authorized the judge to impose the minimum with or without the finding. As *McMillan* recognized, a statute may reserve this type of factual finding for the judge without violating the Constitution." *Harris v. United States*, 536 U.S. 545, 557 (2002).

2.      *Analysis*

Petitioner's challenge to the trial court's upward departure from the minimum sentencing guidelines has no merit. Petitioner claims that his right to due process was violated when the court departed beyond the guidelines "based on disputed facts not proven beyond a reasonable doubt and

facts that were already scored or considered within the guidelines." Pet'r's Mem., at 31. Generally, a sentence imposed within the statutory limits is not subject to habeas review. *Townsend v. Burke,* 334 U.S. 736, 741 (1948); *Morgan v. Birkett,* 2007 WL 2318751, at *1 (E.D. Mich. 2007).

The guidelines at issue are Michigan's previous, judicial sentencing guidelines. Because the offense was committed before January 1, 1999, the effective date of the statutory guidelines, the judicial sentencing guidelines apply. *See* MICH. COMP. LAWS § 769.34(1). In the instant case, using a prior record variable of 20 and an offense variable score of 40, defendant's minimum range under the guidelines would have been 10 to 25 years. *Michigan Sentencing Guidelines* 80 (2d ed. 1988). The trial court deviated from this range and sentenced petitioner to a minimum of 40 years in prison.

In support of his claim, petitioner relies on *Blakely*, pointing to the Supreme Court's holding that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely*, 542 U.S. at 301 (citing *Apprendi,* 530 U.S. at 490).

However, even though the trial court deviated from the minimum guidelines range, it did not increase the penalty beyond the prescribed statutory maximum. Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *Morgan v. Birkett*, 2007 WL 2318751, at *2 (E.D. Mich. 2007) (citing *People v. Claypool,* 470 Mich. 715, 730 n.14 (2004)). MICH. COMP. LAWS § 750.317 sets the statutory maximum sentence for a second-degree murder conviction at life imprisonment. Petitioner's sentence of 40 to 65 years was thus below the maximum sentence authorized by the jury. Claims arising out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can

show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne,* 185 F.Supp.2d 741, 745 (E.D. Mich. 2001). Because petitioner's sentence was below the statutory maximum, his sentencing claim should be denied.

G.      *Lack of Notice (Claims V and VI)*

Petitioner next contends that he was denied his constitutional right to notice of the charge against him. As petitioner was charged with first-degree murder and convicted of the lesser included offense of second-degree murder, petitioner was provided adequate notice, and thus the Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment provides, in relevant part, that a criminal defendant has the right to "be informed of the nature and cause of the accusation" with which he is charged. U.S. CONST. amend. VI. The Fourteenth Amendment right to due process incorporates this right, and it thus runs against the states. *See Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *In re Oliver*, 333 U.S. 257, 273 (1948).

> It is ancient doctrine of both the common law and of our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him. See *Ex parte Bain,* 121 U.S. 1, 10, 7 S.Ct. 781, 786, 30 L.Ed. 849 (1887); *Stirone v. United States,* 361 U.S. 212, 215-217, 80 S.Ct. 270, 272-273, 4 L.Ed.2d 252 (1960); *United States v. Miller,* 471 U.S. 130, 140, 142-143, 105 S.Ct. 1811, 1817, 1818-1819, 85 L.Ed.2d 99 (1985). This stricture is based at least in part on the right of the defendant to notice of the charge brought against him. *United States v. Whitaker,* 144 U.S.App.D.C., at 350-351, 447 F.2d, at 320-321. Were the prosecutor able to request an instruction on an offense whose elements were not charged in the indictment, this right to notice would be placed in jeopardy.

*Schmuck v. United States*, 489 U.S. 705, 717-718 (1989).

The complaint or indictment challenged need not be perfect under state law so long as it adequately informs the petitioner of the crime in sufficient detail so as to enable him to prepare a

defense. "[A]n indictment which fairly but imperfectly informs the accused of the offense for which he is tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986). "[A] charge is sufficiently specific when it contains the elements of the crime, permits the accused to plead and prepare a defense, and allows the disposition to be used as a bar in a subsequent prosecution." *Fawcett v. Bablitch*, 962 F.2d 617, 618 (7th Cir. 1992).

2.     *Lack of Notice*

Petitioner's claim that he lacked notice of the charges against him has no merit. Petitioner argues that the information charging him for the murder of Sharp did not put him on notice that he was charged with second-degree murder. The information, using the label "Homicide-Open Murder-Statutory Short Form," charged petitioner with first-degree murder: "[T]he defendant, contrary to law, did murder Francis David Sharp; contrary to MCL 750.316." As the court of appeals noted, "a prosecutor is permitted to file a felony information for open murder and leave the degree to be determined as the proofs develop." *People v. Whitley*, No. 265482, 2007 WL 600759, at *5 (Mich. Ct. App. Feb. 27, 2007) (per curiam) (*citing People v. Steubenvoll*, 62 Mich. 329, 331 (1886); *People v. Johnson*, 427 Mich. 98, 112 n.12 (1986)).

Because petitioner was charged with first-degree murder, he was on notice to defend against second-degree murder as well. A greater offense includes all of the elements of a lesser included offense and therefore puts a defendant on notice that he must defend against the elements of that offense; a criminal defendant is not denied his right to notice of the charges by a conviction on a lesser offense not set forth in the indictment or information. *See Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000); *Franshaw v. Lynaugh*, 810 F.2d 518, 529 (5th Cir. 1987). Second-degree murder is a lesser included offense of first-degree murder in Michigan: "[f]irst degree and second

20

degree murder are the same crimes except that first-degree murder has the additional elements of premeditation and deliberation." *Brazzell v. Warden*, 1999 WL 1204795, at *4 (6th Cir. 1999) (internal quotations omitted). Thus, petitioner's claim that he lacked notice of the charges against him should be denied.

### 3.    *Lack of Jurisdiction*

Challenges to the sufficiency of a state court information are cognizable on federal habeas review only where the trial deprives a petitioner of his due process right to fair notice of the charges against him. *See Boothe v. Wyrick*, 452 F. Supp. 1304, 1310 (W. D. Mo. 1978). As discussed *supra*, petitioner had notice of the charges against him.

To the extent petitioner attempts to raise this claim as a jurisdictional one, the claim is not cognizable on habeas review. The scope of a state trial court's jurisdiction is a matter of state law. "A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeleri*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam). Similarly, whether an indictment or information is sufficient to confer jurisdiction on a trial court is an issue of state law which is not cognizable on habeas review. *See McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994); *Rose v. Johnson*, 141 F. Supp. 2d 661, 694 (S.D. Tex. 2001). Thus, petitioner's claim that the court lacked jurisdiction should be denied.

## H.    *Ineffective Assistance of Counsel*

Petitioner also raises a claim challenging the assistance rendered by his trial attorneys, arguing that counsel failed to seek a bill of particulars where the state indicted him in statutory short form. As there was no prejudice due to the failure to request a bill of particulars, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 670.

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.    *Analysis*

Petitioner's claim of ineffective assistance of counsel has no merit. Petitioner argues that his trial attorneys were ineffective because they failed to seek a bill of particulars where the state had

charged him with open murder in statutory short form. While Michigan law does mandate a bill of particulars when requested where such a charge is made, there is no prejudice in this case.

MICH. COMP. LAWS § 767.44 permits the use of statutory short form in a murder indictment but provides that "the prosecuting attorney, if seasonably requested by the respondent, shall furnish a bill of particulars setting up specifically the nature of the offense charged." To the extent that petitioner argues violation of MICH. COMP. LAWS § 767.44, a violation of state law is not a cognizable basis for habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Petitioner argues that if a bill of particulars had been issued, the charge against him would have been more "specific" and thus would have excluded second-degree murder:

> Because neither attorney sought out a timely bill of particulars and the misadvi[c]e on the law, a bill of particulars was never issued, and thus, the state was allowed to prosecute the petitioner for murder in general terms, as oppose[d] to, specific. . . . The error here is not harmless. The jury acquitted the petitioner of first degree murder. [H]ad the state set up, within a bill of particulars, the particulars for first degree premeditated or deliberated murder exclusively, the petitioner would not have been convicted and any lesser-next offense would not have gone to the jur[y] for their consideration of whether or not the petitioner was guilty thereof. . . . There is a reasonable probability that had either sought a bill of particulars, Petitioner Whitley would have been acquitted.

Pet'r's Mem., at 51.

However, there was no prejudice in this regard, as the information charged petitioner with first-degree murder, MICH. COMP. LAWS § 750.316, which was sufficient to allow the second-degree murder charge to go to the jury for consideration. Because a greater offense includes all of the elements of a lesser included offense and therefore puts a defendant on notice that he must defend against the elements of that offense, a criminal defendant is not denied his right to notice of the charges by a conviction on a lesser offense not set forth in the indictment or information. *See Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000). Thus, petitioner's claim regarding ineffective

assistance of counsel has no merit and should be denied.

I.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that, "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

24

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.     *Analysis*

If the Court accepts my recommendations regarding the merits of petitioner's claim, it should also deny the certificate of appealability. Petitioner's claims are not debatable among reasonable jurists. The court of appeals's judgment regarding petitioner's evidence and prosecutorial misconduct claims was without doubt a reasonable application of established law because there is no constitutional prohibition of "bad acts" evidence and the prosecutor's conduct did not undermine the trial's fundamental fairness. It is not reasonably debatable that the evidence is sufficient because petitioner's argument merely attacked witness credibility, which is not under review in a sufficiency claim. The court of appeals was also clearly reasonable in its denial of petitioner's other claims: the sentencing claim, because the sentence departed from the minimum guideline range and stayed within the statutory maximum; the lack of notice claim, because petitioner was charged with first-degree murder second-degree murder is a lesser included offense of first-degree murder; and the

25

ineffective assistance of counsel claim, because counsel's failure to seek a bill of particulars did not result in prejudice toward petitioner. Because the resolution of these claims is not reasonably debatable, the Court should deny petitioner the certificate of appealability.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address

26

specifically, and in the same order raised, each issue contained within the objections.


                                          s/Paul J. Komives
                                          PAUL J. KOMIVES
                                          UNITED STATES MAGISTRATE JUDGE
Dated: 8/12/10

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record and  by
electronic means or U.S. Mail on August 12, 2010.

                              s/Eddrey Butts
                              Case Manager